# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF ALASKA

| | |
|---|---|
| In re: | Case No. 17-00411-GS |
| LEO BLAS, | Chapter 13 |
| Debtor(s). | |

## MEMORANDUM DECISION ON
## DEBTOR'S OBJECTION TO PROOF OF CLAIM 3-1

Debtor Leo Blas filed his chapter 13 petition to stay an impending foreclosure against his residence. Blas has been involved in protracted litigation with Bank of America, N.A. (BANA) over the last several years regarding the residence. He has unsuccessfully challenged BANA's ability to foreclose its recorded deed of trust. When a request to the Alaska Superior Court to enjoin BANA's foreclosure failed, Blas filed this bankruptcy. BANA has filed Proof of Claim No. 3-1 in the amount of $370,630.08 secured by Blas's real property located at 24245 Temple Drive, Chugiak, AK 99567 (Property). Blas objects to the claim on a variety of theories, many of which have previously been rejected by the Alaska Supreme Court in one of Blas's prepetition actions. For the reasons set forth below, Blas's objection is overruled in part, with the exception that BANA will be required to produce the original promissory note that supports its proof of claim for inspection at a continued evidentiary hearing.

## FACTS

The lengthy state court history involving the parties spans three lawsuits. The details of these actions are well established in the briefs on file with the court, and will not be repeated in detail herein. The court will, however, note the multiple decisions entered in the most recent two lawsuits, and the claims and issues decided therein.

A.    **The First Lawsuit.**[1]

On January 29, 2014, Blas sued BANA in the Superior Court for the State of Alaska (Superior Court), Case Number 3AN-14-04595CI (First Lawsuit). As noted by the Superior Court, the basis for the action and the theories advanced were scattered and difficult to parse. It is clear, however, that in his prayer for relief Blas sought to enjoin BANA from proceeding with its pending non-judicial foreclosure, and damages under various theories.

The Superior Court issued four separate orders granting defendant BANA's motion for summary judgment in the First Lawsuit.[2] In these four orders, the Superior Court granted summary judgment in favor of BANA on the following claims: Conversion; FDCPA; Wrongful Foreclosure; Fraud; RICO/Investing Proceeds in an Enterprise; Theft Under Various Sections; Unlawful Dealing with Property by a Fiduciary; OCC Interpretive Letter 695; RESPA; IIED; Robo-signing; Breach of Contract; Illegal Dual Tracking; 12 U.S.C. § 92a, 92a1; Federal Fraud Code and Alaska Statutes; Lack of Standing to Foreclose; Federal Code and FHFA OIG Guidelines; AS 06.26.810; AS 34.20.120(a); AS 34.20.110; AS 34.20.070; AS 34.20.070(a); AS 34.20.070(c); AS 34.20.070(h); AS 34.20.115; AS 34.20.080(e); AS 34.20.060; Violation of UCC; TILA; Common Law Rules re: Real Property Conveyance; Failure of Regional Trustee Services Corp. to Register as Business; Failure of Regional Trustee Services Corp. to Buy a Bond; Dodd-Frank Wall Street Reform & Consumer Protection Act; and Bank Servicing Loan Pretending to be a Principal Acting for Beneficiary of Mortgage Note.

---

[1] The court notes that Blas filed an additional Superior Court case against BANA in 2010 which was consensually resolved in 2011, resulting in a home loan modification.

[2] *See* ECF Nos. 43-2 at pp. 68-79, 81-93; 43-3 at pp. 2-14, 16-20.

2

**B.     The Supreme Court Appeal.**

Blas appealed the Superior Court's rulings in *Blas v. Bank of America, N.A.*, Case No. S-16174. In April 2017, the Supreme Court of Alaska issued its Memorandum Opinion and Judgment affirming the Superior Court's grant of summary judgment in case number 3AN-14-04595CI in its entirety.[3] In its opinion, the Supreme Court characterized Blas's state court action as follows:

> Blas's first amended complaint primarily sought to prevent the purportedly illegal foreclosure, alleging that neither Bank of America nor Regional Trustee Services had the authority to initiate foreclosure proceedings. Blas also sought $200,000 in "compensatory and punitive damages" for harassment and expenses related to the two foreclosure attempts, as well as damages for intentional infliction of emotional distress, and suggested that his suit could become a class action.[4]

The Supreme Court specifically held that the Superior Court did not erroneously dismiss Blas's claims under the Fair Debt Collection Practices Act. Similarly, the Supreme Court affirmed BANA's authority to proceed with the non-judicial foreclosure:

> Citing an inapplicable trust statute, Blas contends that Bank of America is neither a beneficiary on his deed of trust nor acting as a beneficiary should. But Bank of America is explicitly listed as the beneficiary of his deed of trust, and it is permitted to act on Fannie Mae's behalf in this context. Blas also claims that Bank of America needs to produce the mortgage note to bring a non-judicial foreclosure action. But Blas points to no state law requiring production of the note in non-judicial foreclosures, and a copy of the mortgage note was produced during discovery. We therefore conclude that Bank of America had authority to bring a foreclosure action against Blas.[5]

---

[3] ECF No. 54-4 at pp. 72-86.

[4] *Id.* at 74.

[5] *Id.* at 81.

3

Although Blas has attempted to vacate the Superior Court's decision, those efforts have been unsuccessful.[6]

### C. The Settlement Agreement Between the Parties.

Shortly after the Supreme Court's decision, the parties reached a settlement by which BANA agreed to permit Blas to remain on the Property for a brief period of time in exchange for Blas's agreement to vacate the Property and release all claims against BANA "arising from the origination or servicing of the Loan as well as in any way related to the Property, any servicing act or omission thereon as well as any claim or issue which was or could have been brought in the Litigation."[7]  Additionally, Blas agreed not to contest any foreclosure after the date by which he was to vacate the residence.[8]  Blas failed to vacate the residence, and continues to live on that Property.

### D. The Second Lawsuit.

On September 12, 2017, Blas commenced Case No. 3AN-17-09098 CI against BANA, again filing in the Superior Court (Second Lawsuit).  Blas listed no fewer than 43 causes of action in his initial complaint.[9]  Blas moved to enjoin BANA from conducting its scheduled non-judicial foreclosure against his residence.  The Superior Court denied the request, and specifically stated that "the foreclosure sale may go forward as scheduled."[10]

---

[6] *See* ECF No. 43-10.

[7] ECF No. 43 at p. 4.

[8] *Id.*

[9] ECF No. 43-7.

[10] ECF No. 43-8.

4

After Blas amended his complaint, the Superior Court granted BANA's motion to dismiss based on the principles of res judicata and collateral estoppel, finding that Blas asserted the same causes of action against the same parties or their privies dismissed in the prior action.[11] The Superior Court concluded that such causes of action were precluded by the Superior Court's prior decision in case number 3AN-14-04595CI, and the Supreme Court's affirmance of that decision.[12]

## 2.  Debtor's Bankruptcy Case.

The same day the Superior Court denied his request for a temporary restraining order against BANA's scheduled foreclosure sale,[13] Blas filed his chapter 13 case.

On February 12, 2018, BANA filed proof of claim 3-1 (POC 3-1), asserting a claim in the amount of $370,630.08 secured by the Property. BANA attached a Mortgage Proof of Claim Attachment detailing the loaned amount, payments, charges, and calculation of the amounts due. BANA also attached copies of the Adjustable Rate Note dated February 22, 2008, in the amount of $300,000, payable to the order of BANA. The promissory note was signed by Blas, and contains an endorsement in blank from BANA. Finally, the Deed of Trust is also attached, identifying Blas as the borrower/trustor, BANA as the lender/beneficiary, and the residence as the collateral securing Blas's obligations under the promissory note.

---

[11] ECF No. 43-9.

[12] *Id*. Rather than listing the causes of action raised by Blas in the Second Lawsuit, the Superior Court simply stated that it had compared "Plaintiff's 2014 complaints, the superior court's decisions thereon in 2015, and Plaintiff's 2017 complaints," and concluded that Blas's 2017 complaints "raise no allegations that the superior court did not already address and decide in its series of decisions in 2015." *Id.* at pp. 3-4.

[13] ECF No. 43-8.

5

The same day BANA filed its proof of claim, Blas filed his "Objection to Improper Proof of Claim and 2nd Demurrer to Objection to Confirmation by a Non-Creditor Bank of America N.A." (Claim Objection).[14] As in the state court actions, much of the argument in the Claim Objection is disjointed, difficult to decipher and unsupported by legal authority. But again, it is clear that Blas challenges BANA's status as a secured creditor in this case. His theories appear to include, among others: lack of standing; evidentiary violations; failure to comply with Fed. R. Bankr. P. 3001; failure to comply with foreclosure requirements; TILA violations; and various challenges to alleged transfers of the mortgage note and/or deed of trust. Though not expressly stated, based on the arguments made the court construes the Claim Objection as a request by Blas that BANA's proof of claim be disallowed in its entirety.

BANA filed its opposition raising the settlement agreement with Blas, and arguing that Blas's objections were barred by res judicata.[15] The court held multiple hearings on the Claim Objection,[16] and the parties filed additional briefs, both authorized and unauthorized.[17] In his subsequent briefing, Blas expanded his challenges to POC 3-1, albeit it with no more clarity than that found in the original objection.

---

[14] ECF No. 40.

[15] ECF No. 43.

[16] *See* ECF No. 46. Although the hearing on the objection was not formally continued, discussions regarding the objection were had at Blas's continued chapter 13 plan confirmation hearings held on April 18, 2018 (ECF No. 61) and May 30, 2018 (ECF No. 82).

[17] *See* ECF Nos. 44, 47, 54, 55, 68, 69. Blas's briefs will be collectively referred to herein as the Claim Objection.

6

**ANALYSIS**

Section 502(a) states that a proof of claim filed under Section 501 is "deemed allowed" unless an objection is made. Fed. R. Bankr. P. 3001(f) provides that "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." The evidentiary presumption notwithstanding, the burden of persuasion remains with the claimant.[18] A debtor seeking disallowance of a proof of claim must present evidence which rebuts the presumption of validity.[19] "Objections without substance are inadequate to disallow claims."[20] "The burden then shifts back to the claimant to produce evidence meeting the objection and establishing its claim."[21]

BANA argues that the Claim Objection is barred by the doctrines of res judicata and collateral estoppel, consisting only of arguments already adjudicated by the Superior and Supreme Courts. The court has reviewed the Claim Objection, and has determined that although some of Blas's arguments are precluded, the enumerated arguments set forth below involve issues that are either unique to the bankruptcy context or otherwise could not have been raised in the prior state court litigation between Blas and BANA.

---

[18] *Litton Loan Servicing, LP v. Garvida (In re Garvida)*, 347 B.R. 697, 706 (B.A.P. 9th Cir. 2006) (citing *Diamant v. Kasparian (In re So. Cal. Plastics, Inc.)*, 165 F.3d 1243, 1248 (9th Cir.1999)).

[19] *Id.*; *see also United Student Funds, Inc. v. Wylie (In re Wylie)*, 349 B.R. 204, 210 (B.A.P. 9th Cir. 2006) ("The presumption may be overcome by the objecting party only if it offers evidence of equally probative value rebutting that offered in the proof of claim.").

[20] *Campbell v. Verizon Wireless S-CA, et al. (In re Campbell)*, 336 B.R. 430, 436 (B.A.P. 9th Cir. 2005).

[21] *Id.*

7

**1.    Standing.**

Blas challenges BANA's standing to file its proof of claim. The Supreme Court has expressly held that BANA has authority to foreclose on the Property.[22] Standing to foreclose does, however, differ from standing to file a proof of claim: the former is grounded in the deed of trust,[23] the latter in the promissory note.[24] Accordingly, notwithstanding the Supreme Court's ruling, the court will address BANA's standing in the context of filing proofs of claim in bankruptcy. "In the context of a claim objection, both the injury-in-fact requirement of constitutional standing and the real party in interest requirement of prudential standing hinge on who holds the right to payment under the Note and hence the right to enforce the Note. In other words, [the claimant] must be a 'person entitled to enforce' the Note in order to qualify as a creditor...entitled to file a proof of claim."[25] Under Alaska's uniform adoption of the UCC, one way to qualify as a "person entitled to enforce a note" is to be the "holder" of the note.[26] "[A] person is a holder if the person possesses the note and either (i) the note has been made payable to the person who has it in his possession or (ii) the note is payable to the bearer of the note."[27]

---

[22] *See* ECF No. 54-4 at p. 81.

[23] *See* AS 34.20.070.

[24] *See Allen v. U.S. Bank, N.A. (In re Allen)*, 472 B.R. 559, 565 (B.A.P. 9th Cir. 2012) (citing *Veal v. American Home Mortgage Servicing, Inc., et al. (In re Veal)*, 450 B.R. 897 (B.A.P. 9th Cir. 2011)).

[25] *Veal v. American Home Mortgage Servicing, Inc., et al. (In re Veal)*, 450 B.R. 897, 920 (B.A.P. 9th Cir. 2011) [internal citation omitted].

[26] AS § 45.03.301.

[27] *Veal,* 450 B.R. at 911; *see also* AS § 45.01.211(b)(23)(A).

Blas asserts repeatedly that BANA is not the holder of the note because it does not have possession of the original note.[28] On May 4, 2018, BANA filed a document that it asserts is a copy of the original note.[29] That note is made payable to BANA.[30] It is further endorsed in blank.[31] "When endorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially endorsed."[32] Thus, even if the note were not made payable to BANA, the note is payable to the bearer.

BANA has asserted it is the bearer of the note, and thus BANA is a "person entitled to enforce a note" under the UCC. The production of the copy of the promissory note containing the endorsement in blank certainly supports this position. However, the copy provided by BANA at ECF No. 68 is not supported by a sworn statement made by a person asserting personal knowledge of its alleged status as the original document or BANA's possession of the note. Lacking the evidentiary predicate necessary to establish BANA's possession of the bearer note, the court cannot rule. Accordingly, the court will issue a separate order setting a further evidentiary hearing on this matter to permit BANA to produce the document to the court and Blas for inspection in person. The court's ruling on Blas's objection to BANA's proof of claim based on standing will be deferred until conclusion of that evidentiary hearing.

---

[28] *See* ECF No. 69, *passim*.

[29] *See* ECF No. 68, Exhibit 3.

[30] *See* ECF No. 68-3 at p. 1.

[31] *See* ECF No. 68-3 at p. 6.

[32] AS § 45.03.205(b).

2. UCC 3-300 *et seq.*

Blas makes various arguments based on multiple provisions of the UCC series 3-300 *et seq.* Each of these arguments appears to hinge on BANA's alleged inability to produce the original note. As stated above, on May 4, 2018, BANA provided evidence allegedly proving that it is in fact in possession of the original note.[33] However, the document in question has not been authenticated to the court's satisfaction, and a further evidentiary hearing will be set on this issue as stated above. The court's ruling on Blas's objection to BANA's proof of claim based on UCC 3-300 *et seq.* will be deferred until conclusion of that evidentiary hearing.

3. Truth In Lending Act (TILA), 15 U.S.C. § 1600, *et seq.*

Blas's next argument pertains to a rescission letter he sent to BANA pursuant to 11 U.S.C. § 1635, which was allegedly received by BANA on or about October 2, 2017. He contends that this letter effectuated a rescission of the Loan Agreement dated February 22, 2008, and thus, BANA's proof of claim based on that Loan Agreement should be disallowed.

The Supreme Court affirmed the Superior Court's dismissal of Blas's cause of action for TILA violations in the First Lawsuit.[34] However, the Superior Court's dismissal of Blas's TILA claims was due to Blas's inadequate pleading of that cause of action.[35] In this dispute, however, Blas relies on a specific TILA provision: 15 U.S.C. § 1635.[36] Moreover, Blas's argument

---

[33] *See* ECF No. 68-3.

[34] *See* ECF No. 54-4, at pp. 84-86.

[35] *See* ECF No. 54-4, at p. 13 ("Citing entire chapters of legislation or regulations does not put Defendant on notice of Plaintiff's claims.").

[36] Additionally, the court notes that Blas's Second Lawsuit was pending when the TILA rescission letter was sent. Although Blas potentially could have raised this argument in his Second Lawsuit, because the letter was sent after the Second Lawsuit was commenced, the court addresses it here.

10

appears to be based on actions taken by him after the state court decisions were issued: he claims he sent a TILA rescission letter which was received by BANA on October 2, 2017.[37] Accordingly, it does not appear that Blas's arguments could have been raised in the state court litigation, and thus are not subject to the limitations of res judicata.

Blas's reliance, however, on § 1635 is misplaced. Section 1635(f) of TILA places a limit on the time in which a borrower may rescind a consumer credit transaction secured by the consumer's principal residence. A consumer may rescind a transaction within three years of consummation if "the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor."[38] Blas's Loan Agreement with BANA was consummated on February 22, 2008. Blas did not send the rescission letter until 2017. This is well outside the three-year period provided for letters of rescission under 15 U.S.C. § 1635.

Additionally, even if Blas's rescission had been timely, § 1635(b) requires that upon rescission, "[i]If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value." In other words, BANA would be entitled to recover the proceeds of its loan from Blas. The court therefore cannot conclude that even if Blas's rescission were effective, BANA would not have a claim in Blas's bankruptcy case in the amount of the funds loaned.

---

[37] ECF No. 69 at pp. 9-10, para. 15.

[38] 15 U.S.C. § 1635(f); *see also Taylor v. Deutsche Bank Nat'l Trust Co.*, 2016 WL 6124233, at *2 (D. Ariz. Oct. 20, 2016), *aff'd*, 2018 WL 1148451 (9th Cir. Mar. 5, 2018).

For these reasons, Blas's TILA argument is overruled.

**4. Hearsay.**

Blas makes numerous references to hearsay throughout his objection. Blas appears to rely on a 2018 Oregon Court of Appeals decision, *U.S. Bank National Ass'n for Structured Asset Investment Loan Trust, 2005-10 v. McCoy*,[39] for his argument that "BANA cannot base a Federal Bankruptcy Claim on inadmissible hearsay." But, he has not identified any specific evidence which he contends is hearsay. His argument appears to involve transfer of the underlying note and/or deed of trust.[40] Blas has not explained how the evidence in support of POC 3-1 constitutes inadmissible hearsay.

The *McCoy* opinion addressed declaratory evidence provided in support of a *judicial* foreclosure action. BANA's proof of claim does not rely on any declaratory evidence, nor does this claim allowance dispute involve a judicial foreclosure action. Accordingly, it appears that *McCoy* has no bearing on the dispute currently before the court. For these reasons, the hearsay objection to POC 3-1 is overruled.

**5. Multiple Claimants.**

Blas repeatedly asserts that two parties have filed claims on the same loan in this bankruptcy case: BANA and Clear Recon Corporation (CRC). This is not the case; CRC has not filed a proof of claim in Blas's bankruptcy case. CRC's notice of default was recorded on August 31, 2017, approximately three months before Blas commenced this case. The notice of

---

[39] 290 Or.App. 525 (2018).

[40] ECF No. 69 at p. 10, para. 17. BANA executed an assignment of the subject deed of trust on or around November 30, 2010. *See* ECF No. 54-17 at p. 7.

default is not a proof of claim, and Blas has not cited any authority demonstrating that it should be considered an informal proof of claim. Accordingly, this objection is overruled.

### 6. Lack of Documentation.

To the extent Blas's objection based on lack of documentation in support of POC 3-1[41] is distinct from his objections rooted in standing doctrine, those objections are overruled. "Objections without substance are inadequate to disallow claims, even if those claims lack the documentation required by Rule 3001(c)."[42] Furthermore, attached to POC 3-1 is Official Form 410A, the Mortgage Proof of Claim Attachment, which includes a lengthy loan payment history from the first date of Blas's default.[43] Such evidence is sufficient to satisfy the requirements of Fed. R. Bankr. P. 3001(c).

### 7. Best Evidence Rule.

Blas's arguments regarding the Best Evidence Rule appear to be directed to BANA's reliance upon a copy of the promissory note. The Best Evidence Rule is found in Fed. R. Evid. 1002, which provides that "[a]n original writing...is required in order to prove its content unless these rules or a federal statute provides otherwise." The Rule of Evidence immediately following the Best Evidence Rule, Fed. R. Evid. 1003, provides that "[a] duplicate is admissible

---

[41] *See* ECF No. 40 at p. 2, para. 9.b. ("The security interest in the property and the evidence that such security interest has been perfected was not provided with the Proof of Claim in violation of [F.R.B.P.] 3001(d)."); ECF No. 69 at p. 12, para. 22 ("BANA's Proof of Claim fails to set forth any documentation like the original note...demonstrating according to the rules of evidence that the filer of the claim is actually the holder of a secured loan on Debtor's property or that 'its loan', if any, has ever been perfected.").

[42] *Campbell*, 336 B.R. at 436.

[43] Blas has made reference to "a case entitled *Proodian-V-Chase-Order*," which purportedly supports Blas's contention that the court should order BANA to provide "individual loan level wiring receipts." This court was unable to locate the referenced case or any decision requiring wire transfer receipts in support of a secured creditor's proof of claim.

13

to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate."

As stated above, on May 4, 2018, BANA filed a duplicate of the original note.[44] Blas's only challenge to the authenticity of the note is that it is unlikely the blue ink on his signature would still be bright after 10 years of aging, and that the initial loan number on the front page is partially blocked, whereas in prior produced copies the full loan number could be read. Blas also appears to argue that the authenticity of documents produced by BANA is questionable because they differ from those submitted by the foreclosure trustee, though he has provided no details establishing what those differences are.

While the court is not persuaded that a partial redaction renders the most recently produced copy of the note inauthentic or that there are issues regarding the aging of the ink used, this objection is mooted by the court's decision above to require BANA to produce the original note for failure to properly present the evidentiary foundation to enable the court to find that the original note is within its possession. For these reasons, Blas's objection based on the Best Evidence Rule is overruled.[45]

### 8. Qualified Written Request/1692(g) Validation Letter.

Blas has not explained what bearing his pre-petition (but post-Superior Court judgment)[46] request for an accounting has on the allowance of POC 3-1, particularly in light of BANA's

---

[44] *See* ECF No. 68-3.

[45] Blas's demand that BANA "describe the conditions under which a mechanical device was used to reproduce the loan documents" is similarly denied as moot in light of the requirement to produce the original note. *See* ECF No. 69 at p. 15, para. g.

[46] ECF No. 69 at p. 16, para. 26 ("Debtor...served a Qualified Written Request and 1692(g) validation letter to BANA on August 21, 2017.") [emphasis in original omitted].

Mortgage Proof of Claim Attachment. To the extent this is an objection to allowance of POC 3-1, it is overruled for lack of cited authority.

### 9. Malicious and Oppressive Conduct.

Blas contends that BANA has engaged in malicious and oppressive conduct, "from 2010 to date."[47] This appears to be an affirmative claim rather than a challenge to BANA's proof of claim. To the extent this is an objection to allowance of POC 3-1, it is overruled for lack of cited authority and evidence. Moreover, to the extent this objection involves conduct prior to the issuance of the Superior Court judgments, it is barred by the doctrine of res judicata, since it could have been brought in the prior state court actions.

### 10. Actual Possession of Note at Claim Inception.

The court is not persuaded that BANA had to be in actual possession of the note when it filed its proof of claim. The case cited by Blas in support of this argument was issued by the United States Bankruptcy Court for the District of New Jersey[48] and is factually distinguishable from this case. In *Kemp*, the mortgage notes in question were endorsed to Bank of New York as trustee, but physical possession of them was retained by the originator of the notes, Countrywide.[49] The court in *Kemp* found the failure to transfer possession of the notes fatal to Bank of New York's standing to enforce the notes.[50] Unlike the claimants in *Kemp*, BANA

---

[47] ECF No. 69 at p. 16, para. 28.

[48] *Kemp v. Countrywide Home Loans, Inc. (In re Kemp)*, 440 B.R. 624 (Bankr. D.N.J. 2010).

[49] *Id.* at 627-628.

[50] *Id.* at 630.

15

claims to be the holder of the note.[51] For these and other reasons well stated by the United States Bankruptcy Court for the District of Nevada in its 2013 opinion in *In re Phillips*, 491 B.R. 255, 263-264 (Bankr. D. Nev. 2013), the court declines to follow the reasoning of *Kemp* and overrules the Claim Objection on this ground.

### 11. Chain of Title Report/Wire Transfer History.

In support of his argument that BANA's proof of claim must be supported by a "chain of title report"and a "wire transfer history," Blas has cited what he represents is an order in a case called *Proodian v. Chase*, allegedly dated February 15, 2018, and issued by an unknown court.[52] Blas has not produced the order, nor has he explained why any such order is persuasive authority, much less binding on this court. Morever, the court is not independently aware of any such requirement to include a "chain of title report" or a "wire transfer history." This objection is overruled.

### 11. Criminal Presentation of False Claim (18 U.S.C. § 152(4)).

No evidence has been presented which demonstrates that BANA "knowingly and fraudulently" presented any false claim for proof against the estate.[53] Because allegations of fraud must be plead with particularity, and Blas has also not explained how an alleged violation of 18 U.S.C. § 152(4) results in disallowance of a proof of claim, this objection is overruled. The court is without authority to consider criminal claims

---

[51] *See* ECF No. 68-3.

[52] ECF No. 69, at pp. 12, para. 22; 16, para. 27.

[53] 18 U.S.C. 152(4) provides that "A person who...knowingly and fraudulently presents any false claim for proof against the estate of a debtor, or uses any such claim in any case under title 11, in a personal capacity or as or through an agent, proxy, or attorney...shall be fined under this title, imprisoned not more than 5 years, or both."

16

### 12. Claim and Issue Preclusion: Res Judicata and Collateral Estoppel.

A federal court determining the preclusive effect of a state court judgment must apply the preclusion laws of the state that issued the judgment.[54] The elements necessary to the application of the res judicata doctrine are "'(1) a final judgment on the merits, (2) from a court of competent jurisdiction, (3) in a dispute between the same parties (or their privies) about the same cause of action.'"[55] "[I]n Alaska, 'res judicata covers relevant claims that could have been raised in the prior case, but were not.'"[56] In addition, "[c]ollateral estoppel prohibits a party from re-litigating an issue of fact if the following four factors are met: (1) the party against whom the preclusion is employed was a party to or in privity with a party to the first action; (2) the issue precluded from relitigation is identical to the issue decided in the first action; (3) the issue was resolved in the first action by a final judgment on the merits; and (4) the determination of the issue was essential to the final judgment."[57]

All other arguments set forth in the Claim Objection that are not specifically addressed above are barred by the doctrines of res judicata and collateral estoppel, for the reasons set forth

---

[54] *Hiser v. Franklin*, 94 F.3d 1287, 1290 (9th Cir. 1996) (quoting *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 896 (1984)) ("It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered.").

[55] *Conitz v. Alaska State Com'n for Human Rights*, 325 P.3d 501, 507 (Alaska 2014) (quoting *Angleton v. Cox*, 238 P.3d 610, 614 (Alaska 2010)).

[56] *Hiser*, 94 F.3d at 1290-1291 (quoting *Hoffman Const. Co. v. Active Erectors & Installers, Inc.*, 969 F.2d 796 (9th Cir. 1992), *cert. denied*, 507 U.S. 911, 113 S.Ct. 1258 (1993)).

[57] *Powercorp Alaska, LLC v. Alaska Energy Authority,* 290 P.3d 1173, 1182 (Alaska 2012) (quoting *State, Dep't of Health & Soc. Servs., Office of Children's Servs. v. Doherty*, 167 P.3d 64, 71 (Alaska 2007)).

17

in the Superior Court's order granting BANA's motion to dismiss the Second Lawsuit.[58] These issues and claims were either finally decided by the prior decisions of the Superior Court and the Supreme Court or could have been raised and adjudicated in those prior actions.

The court will enter a separate order overruling the Claim Objection as stated above and setting a further evidentiary hearing to provide BANA the opportunity to present the original mortgage note to Blas and the court for inspection.

DATED: July 5, 2018.

BY THE COURT

/s/ Gary Spraker
GARY SPRAKER
United States Bankruptcy Judge

Serve: Leo Blas, 24245 Temple Drive, Chugiak, AK 99567
A. Hicks, Esq.
N. Jipping, Trustee
U.S. Trustee
Claims Register

---

[58] *See* ECF No. 43-11. These arguments encompass the following arguments decided by the Superior and Supreme Courts: wrongful foreclosure (ECF No. 54-4 at p. 82); dual tracking (*Id.* at 84); Dodd-Frank and RESPA (*Id.* at p.85 n.35); standing (*Id.* at p. 81); robo-signing (*Id.* at p. 85); TILA (*Id.* at n. 35); improper substitutions (*Id.* at 83-84); notice of default deficiencies (*Id.* at p. 83); fraud (ECF No. 43-2 at pp. 83-84); wrongful foreclosure (*Id.* at p. 83); trust registration (*Id.* at p. 87); failure of trustee to register as a business (*Id.* at p. 87); bank servicing loan pretending to be principal acting for beneficiary of the mortgage note (*Id.* at p. 88); AS 34.20.070(a) (ECF No. 43-3 at pp. 8-9); unclean hands (could have been raised in state court litigation); and statute of limitations (could have been raised in state court litigation).