UNITED STATES BANKRUPTCY COURT
DISTRICT OF ALASKA

In re:

LEO BLAS,

Debtor.

Chapter 7
Case No. 17-00411 GS

**MEMORANDUM DECISION ON MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

For over five years, debtor Leo Blas has challenged the efforts of creditor Bank of America, N.A. (BANA) to pursue its state court remedies with regard to Mr. Blas's real property located at 24245 Temple Drive, Chugiak, AK 99567 (Property). In yet another effort to pursue those remedies, BANA has filed a motion for relief from the automatic stay as to the Property, based on Mr. Blas's alleged bad faith in filing this bankruptcy case. For the reasons set forth below, the court will enter an order granting BANA's motion for relief from the automatic stay.

**I.    FACTS**

As stated in the court's Memorandum Decision on Debtor's Objection to Proof of Claim 3-1,[1] the state court history between the parties is well established by the briefs on file with the court. The brief discussion of that history contained in that decision is incorporated herein by this reference, with additional details pertinent to the underlying motion as follows.

**A.    The Settlement Agreement Between the Parties**

After the Alaska Supreme Court issued its decision[2] affirming the Alaska Superior Court's grant of summary judgment in case number 3AN-14-04595CI,[3] Mr. Blas entered into a settlement agreement with BANA (Settlement Agreement). The confidential Settlement Agreement was filed with the court in this case, and the court has reviewed that document.[4] For purposes of this decision, the pertinent portions of the Settlement Agreement are as follows:

---

[1] ECF No. 105.
[2] ECF No. 54-4 at pp. 72-86. The court may take judicial notice of its own case docket. *See* Fed. R. Evid. 201(b).
[3] *See* ECF Nos. 54-3, pp. 68-93; 54-4, pp. 1-20.
[4] ECF No. 124.

1

1. In exchange for a monetary sum and approximately six additional weeks in the Property,[5] Mr. Blas agreed to vacate the Property, with BANA to have "the unqualified right to enforce its right of possession."

2. As of the date Mr. Blas agreed to vacate the Property, he was deemed to be a trespasser on the Property.

3. BANA was entitled to obtain a Writ of Eviction/Restitution if Mr. Blas remained on the Property after the agreed date of departure, and Mr. Blas agreed to waive his rights to contest the issuance or enforcement of any such writ.

4. Mr. Blas acknowledged that he had defaulted under the terms of the loan documents, and consented to BANA's non-judicial foreclosure. Pursuant to the Settlement Agreement, Mr. Blas "expressly waives any and all rights and defenses he may have to challenge or contest said foreclosure, including, but not limited to, any claims or defenses contesting his default under the [loan documents] *or contesting the validity of the foreclosure process* or sale." [Emphasis added.]

5. Mr. Blas agreed to dismiss Alaska Superior Court case number 3AN-14-04595CI.

Both Mr. Blas and a representative of BANA signed the Settlement Agreement.

Mr. Blas vacated the Property in June 2017, but according to his own testimony, returned approximately one week later because the Settlement Agreement did not expressly provide that he could not return to the Property after vacating.[6]

B. **Second State Court Lawsuit**

Thereafter, on September 12, 2017, Mr. Blas commenced Alaska Superior Court case number 3AN-17-09098CI against BANA.[7] His complaint included a request for issuance of a temporary restraining

---

[5] The Settlement Agreement set a date of June 19, 2017 for Mr. Blas to vacate the Property; Mr. Blas's signature on the agreement is dated April 28, 2017.
[6] ECF No. 172 at p. 27:4-28:12; 32:16-35:20.
[7] ECF No. 43-8.

2

order to halt BANA's scheduled nonjudicial foreclosure sale. On November 30, 2017, the Superior Court issued its order denying the request for a temporary restraining order, ruling that BANA's foreclosure sale could proceed as scheduled.[8]

In March of 2019, the Alaska Superior Court granted BANA's motion for summary judgment, based in part on its finding that Mr. Blas's current challenges to Bank of America's foreclosure were precluded by the doctrine of res judicata.[9] Blas appealed that decision to the Alaska Supreme Court. On October 9, 2019, the Alaska Supreme Court affirmed the Superior Court's decision.[10] In that decision, the Supreme Court reiterated once again that "'Bank of America ha[s] authority to bring a foreclosure action against Blas.'"[11] It further addressed Mr. Blas's argument that Fannie Mae has standing to foreclose on the note, stating that "even if Fannie Mae somehow were involved, current federal authority suggests that Fannie Mae should not be considered a state actor in foreclosure proceedings."[12]

### C. Mr. Blas's Bankruptcy Case

Mr. Blas filed this bankruptcy case on the same day that the Superior Court denied his request to enjoin BANA's foreclosure of the Property. On June 12, 2018, BANA filed its Motion for Relief from Stay (Motion).[13] BANA seeks relief from the automatic stay under § 362(d)(1), alleging that Mr. Blas has proceeded with bad faith in his dealings with BANA. Primarily, BANA contends that Mr. Blas entered into a settlement agreement with BANA pursuant to which he received cash payments in exchange for: (1) vacating the Property; and (2) agreeing not to contest BANA's nonjudicial foreclosure of the Property.[14]

---

[8] ECF No. 43-9. Although Mr. Blas commenced this bankruptcy case on the same day the Superior Court entered its order denying his request for a temporary restraining order, entry of that order by the Superior Court did not run afoul of the automatic stay. *See Tohono O'odham Nation v. Schwartz*, 837 F.Supp. 1024, 1027 (D. Ariz. 1993) ("[T]he circuit courts which have addressed this question have held that the automatic stay applies only to actions brought against the bankrupt, not to those brought by the bankrupt.") [citing cases]; *White v. City of Santee (In re White)*, 186 B.R. 700, 704 (B.A.P. 9th Cir. 1995).
[9] ECF No. 230-1, p. 3, ¶ 3.
[10] *Id.*, *passim.*
[11] *Id.* at p. 5, ¶ 5.
[12] *Id.* (citing cases).
[13] ECF No. 86. This matter has been held in abeyance pending settlement negotiations that ultimately proved unsuccessful.
[14] *Id.* at p. 3.

3

BANA alleges that Mr. Blas signed that agreement and accepted the funds tendered pursuant to that agreement, but returned to the Property after vacating for only a brief period and continued to contest BANA's efforts to foreclose.

On June 21, 2018, Mr. Blas filed his opposition to the Motion (Opposition).[15] Mr. Blas's nineteen-page Opposition raises multiple arguments, which the court has attempted to summarize as follows: (1) BANA lacks standing to pursue relief from the automatic stay; (2) BANA has not demonstrated that cause exists to lift the automatic stay in this case; (3) the dollar figures set forth in the Motion are inaccurate; (4) the loan in question was rescinded under TILA; (5) underlying state court litigation is ongoing; and (6) various evidentiary objections. Mr. Blas did not challenge BANA's allegations regarding his noncompliance with the Settlement Agreement. BANA did not file a reply brief.

On July 6, 2018, the court held its preliminary hearing on the Motion. Following the preliminary hearing on the Motion, on July 6, 2018, the court issued its order[16] setting a final hearing on BANA's motion for relief from the automatic stay for August 1, 2018, to be heard together with an evidentiary hearing on Mr. Blas's objection to BANA's proof of claim. Pursuant to that order, the court set deadlines for both parties to file witness and exhibit lists. On July 24, 2018, Mr. Blas filed his witness and exhibit list,[17] including a "certified forensic document examiner" by the name of Roland Emmons, who was to appear at the final hearing by telephone. BANA filed its exhibit and witness lists on July 25, 2018.[18]

At the hearing on August 29, 2018, BANA's representative presented a document that the court accepted as the original promissory note signed by the debtor in February 2008.[19] The evidentiary hearing was continued to September 13, 2018 to specifically address the parties' arguments and evidence regarding

---

[15] ECF No. 93.
[16] ECF No. 108. The August 1, 2018 hearing was later continued by stipulation of the parties to August 29, 2018. *See* ECF No. 119.
[17] ECF No. 117.
[18] ECF No. 118.
[19] ECF No. 171 at p. 9:1-5; 37:13-38:13.

4

the Motion. At the September 13, 2018 hearing, BANA presented a witness to authenticate the Settlement Agreement, and Mr. Blas also testified. Mr. Blas did not present any witnesses.

Subsequent to the evidentiary hearings, on September 17, 2018, Mr. Blas filed his Motion for Mediation Assistance Per Hearing on September 14, 2018 (Mediation Motion).[20] On November 13, 2018, the court entered its Order Regarding Request for Mediation and Staying Pending Matters Between Debtor and Bank of America, N.A. (Order Staying Proceedings)[21] which stayed all matters in Mr. Blas's bankruptcy case and related adversaries, including all proceedings in the main bankruptcy case, with the sole exception of the chapter 13 trustee's motion to dismiss (Motion to Dismiss).[22] Since the entry of the Order Staying Proceedings, two separate unsuccessful settlement conferences have been conducted in this case by the Hon. Trish Brown.[23] Additionally, in response to the Motion to Dismiss, on February 13, 2019 Mr. Blas converted his case to one under chapter 7.[24] On May 31, 2019, the Office of the Clerk entered Mr. Blas's chapter 7 discharge.[25]

At a status conference held on June 5, 2019, the court confirmed on the record that the only matter which remains stayed under the Order Staying Proceedings is adversary proceeding *Blas v. Bank of America, N.A.*, 18-90028-GS. Also at that status conference, the chapter 7 trustee confirmed his knowledge of the Motion, and his non-opposition thereto.

## II. ANALYSIS

### A. Summary Nature of Stay Relief Proceedings

Mr. Blas has presented multiple arguments which the court interprets as an attempt to argue the merits of BANA's foreclosure rights regarding the Property. "A proceeding to determine eligibility for relief from a stay only determines whether a creditor should be released from the stay in order to argue

---

[20] ECF No. 138.
[21] ECF No. 161.
[22] ECF No. 157.
[23] *See* ECF Nos. 181 and 219.
[24] *See* ECF No. 183.
[25] ECF No. 221.

the merits in a separate proceeding. Given the limited nature of the relief obtained through this proceeding and because final adjudication of the parties' rights and liabilities is yet to occur, a party seeking stay relief need only establish that it has a colorable claim to the property at issue."[26] It is not lost on the court that this matter has now effectively outlasted the bankruptcy itself. Upon conversion of the case to chapter 7, the only potential asset of the estate was the Property itself. Upon the failure of the settlement conferences, the chapter 7 trustee has given notice that the bankruptcy has no assets and is ready to be closed, which together with the discharge, would effectively terminate the automatic stay.

### B.     Mr. Blas's Challenges to BANA's Standing to File the Motion

To be blunt, the Alaska Supreme Court's decisions establish that BANA is entitled to pursue foreclosure of the Property based upon its interests in the note and deed of trust. This alone establishes BANA's standing as a creditor and to seek relief from stay.[27] While it is tempting to end the analysis there, Mr. Blas continues to make multiple objections to BANA's standing to bring the Motion, and appears to be confused about the various roles of investors and assignees in secured transactions. He has repeatedly argued that Fannie Mae is the party in interest with standing to foreclose on the Property, not BANA. Mr. Blas is incorrect. As an investor in the promissory note Mr. Blas executed with BANA, Fannie Mae is entitled to the ultimate payments on the note. That entitlement does not preclude BANA from being the payee, and the beneficiary under the deed of trust with legal standing to foreclose.[28]

---

[26] *Arkison v. Griffin (In re Griffin)*, 719 F.3d 1126, 1128 (9th Cir. 2013).

[27] In fact, this court has taken judicial notice of Alaska Supreme Court case no. S-16933 in which, on March 13, 2019, the Supreme Court issued its decision affirming the Superior Court's denial of Mr. Blas's Rule 60(b) motion for relief from the decision regarding BANA's standing to foreclose. This court may take judicial notice of the dockets of other courts. *See Strand v. Clark (In re Clark)*, 2012 WL 1911926, at *1 n.4 (B.A.P. 9th Cir. May 25, 2012)(quoting *Kowalski v. Gagne*, 914 F.2d 299, 305 (1st Cir. 1990))("'It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand.'"). Moreover, Mr. Blas's reference at the June 5, 2019 status conference to a pending appeal set for argument on August 22, 2019 does not, without more, require this court to disregard or overturn the Alaska Supreme Court's decision. *See Lance v. Dennis*, 546 U.S. 459, 463, 126 S.Ct. 1198, 1201 (2006) ("[U]nder what has come to be known as the *Rooker–Feldman* doctrine, lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments.").

[28] *See Matos v. Laurus Funding Group, Inc.*, 2013 WL 253483, at *5 (D. Hawai'i Jan. 23, 2013) ("That Fannie Mae is an 'investor'…does not change the fact that Nationstar is the current holder of the Note and Mortgage, entitled to enforce their terms."). *See also* ECF No. 233 at pp. 5-7 (addressing Mr. Blas's argument that Fannie Mae, not BANA, is the proper party to file a proof of claim in this case on the loan in question); ECF No. 230-1, p. 5, ¶ 5.

6

Moreover, Mr. Blas did not list Fannie Mae as a creditor in this bankruptcy case.[29] His failure to do so is contradictory to his assertion now that Fannie Mae is the party with standing to bring the Motion.

Additionally, Mr. Blas's arguments regarding the assignment of the deed of trust to BAC Home Loans Servicing, LP (BAC) are ill-founded. Mr. Blas contends that because BANA assigned the deed of trust to BAC, BANA lacks standing to foreclose on the Property and, presumably, to bring the Motion. BANA's assignment to BAC was executed on November 30, 2010.[30] BAC merged with BANA in 2011.[31] Accordingly, "the distinction between BAC and Bank of America is irrelevant."[32]

### C. Mr. Blas's Standing to Oppose the Motion

Since the filing of the Motion, Mr. Blas voluntarily converted his chapter 13 case to one under chapter 7. "[The automatic stay] continues with respect to enforcement of a lien against property of the estate until such time as the property ceases to be property of the estate. The [chapter 7] trustee, however, is the representative of the estate, and normally a [chapter 7] debtor does not have standing to oppose relief from the stay with respect to the estate's interest in the property."[33] Notwithstanding the conversion of Mr. Blas's case, the court notes Mr. Blas maintains standing to challenge the Motion because he has asserted a homestead exemption in the Property.[34]

### D. Cause Exists to Grant the Motion Under 11 U.S.C. § 362(d)(1)

Section 362(d)(1) provides that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief form the stay provided under subsection (a) of this section, such as by terminating…such stay…for cause." BANA asserts that Mr. Blas's bad faith in his actions concerning

---

[29] *See* ECF No. 1 (Fannie Mae not listed on mailing matrix); 20 (Fannie Mae not listed in schedules).
[30] ECF No. 54-17 at p. 7.
[31] *See Arriola v. Naylor (In re Arriola)*, 2016 WL 1384788, at *1 n.2 (B.A.P. 9th Cir. Apr. 5, 2016); *see also* unrebutted testimony of BANA's witness on August 29, 2018, ECF No. 171 at p. 84:12-13.
[32] *Id.*
[33] *Bank of America, N.A. v. Bertka (In re Bertka)*, 2010 WL 2756964, at *1 (Bankr. E.D. Va. July 12, 2010); *see also Lira v. Wells Fargo Bank, N.A., et al. (In re Lira)*, 2011 WL 45029090 (B.A.P. 9th Cir. July 18, 2011); *In re Mohr*, 538 B.R. 882, 888 (Bankr. N.D. Ga. 2015) (citing cases); *In re Moore*, 450 B.R. 849 (Bankr. N.D. Ind. 2011).
[34] ECF No. 20, p. 13. *See, e.g., In re Moreira*, 173 B.R. 965, 973 (Bankr. D. Mass. 1994) (noting chapter 7 debtor's standing to oppose a motion for relief from the automatic stay in light of her asserted exemption in the subject property of the estate).

the Property, particularly with regard to the Settlement Agreement, demonstrate his bad faith for purposes of establishing cause for relief from stay.

"Cause" under section 362(d)(1) includes a lack of good faith on the part of the debtor.[35] The Ninth Circuit has looked to its decision in *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825 (9th Cir.1994) in determining whether a debtor's bad faith warrants entry of an order lifting the automatic stay.[36] "'The existence of good faith depends on an amalgam of factors and not upon a specific fact.' The test is whether a debtor is attempting to unreasonably deter and harass creditors or attempting to effect a speedy, efficient reorganization on a feasible basis."[37]

"The term 'good faith' is somewhat misleading. Though it suggests that the debtor's subjective intent is determinative, this is not the case."[38] Instead, "[t]he bankruptcy court should examine the debtor's financial status, motives, and the local economic environment"[39] when ascertaining whether the debtor is proceeding in bankruptcy in good faith. The Fifth Circuit, in *Matter of Little Creek Development Co.*, enumerated certain factors typically present in bad faith cases.[40] Those factors were summarized by the Ninth Circuit Bankruptcy Appellate Panel as follows:

- (1) The debtor has only one asset.
- (2) The secured creditors' lien encumbers that asset.
- (3) There are generally no employees except for the principals.
- (4) There is little or no cash flow, and no available sources of income to sustain a plan of reorganization or to make adequate protection payments.
- (5) There are few, if any, unsecured creditors whose claims are relatively small.
- (6) There are allegations of wrongdoing by the debtor or its principals.

---

[35] *Can-Alta Properties, Ltd. v. State Savings Mortg. Co. (In re Can-Alta Properties, Ltd.)*, 87 B.R. 89, 91 (B.A.P. 9th Cir. 1988) ("It is well established that a lack of good faith constitutes 'cause' for lifting the stay to permit foreclosure or for dismissing the case.").

[36] *See Fryer/McElhaney Joint Venture v. S&S/Moab Enterprises (In re S&S/Moab Enterprises)*, 83 F.3d 428, at *2 (9th Cir. 1996). *See also In re Mense*, 509 B.R. 269 (Bankr. C.D. Cal. 2014); *Truebro, Inc. v. Plumberex Specialty Products, Inc. (In re Plumberex Specialty Products, Inc.)*, 311 B.R. 551, 561 (Bankr. S.D. Cal. 2004).

[37] *Marsch*, 36 F.3d at 828 (quoting *State of Idaho, Dept. of Lands v. Arnold (In re Arnold)*, 806 F.2d 937, 939 (9th Cir. 1986)); *see also Can-Alta Properties*, 87 B.R. at 91 (quoting *Little Creek Development Co. v. Commonwealth Mortgage Corp. (Matter of Little Creek Development Co.)*, 779 F.2d 1068, 1072 (5th Cir. 1986)) ("Findings of lack of good faith in proceedings based upon section 362(d)…have been predicated on certain recurring but non-exclusive patterns, and they are based on a conglomerate of factors rather than on any single datum.").

[38] *Marsch*, 36 F.3d at 828.

[39] *Arnold*, 806 F.2d at 939.

[40] *Little Creek*, 779 F.2d at 1072-1073.

      (7) The debtor is afflicted with the "new debtor syndrome" in which a one-asset equity has been created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors.
      (8) Bankruptcy offers the only possibility of forestalling loss of the property.[41]

      Although factors 3 and 7 are inapplicable to Mr. Blas's case, most of the remaining factors are consistent with the facts of Mr. Blas's bankruptcy case. Notwithstanding his assertion that he holds a $200,000 wrongful foreclosure claim against BANA, the only asset of significant value listed in Mr. Blas's schedules is the Property.[42] BANA's lien encumbers the Property. Mr. Blas scheduled only one unsecured creditor, Navient, with a claim of approximately $4,000.[43] BANA has brought allegations of wrongdoing against Mr. Blas: namely, that he has breached the Settlement Agreement. Finally, in light of the state court decisions in BANA's favor addressing the same issues raised by Mr. Blas in his bankruptcy, it appears that bankruptcy does offer the only possibility of forestalling his loss of the Property.

      In addition to those factors, the facts of this case further support a finding that cause for relief from stay is well established. First and foremost, Mr. Blas has lived on the Property for over two years *after* agreeing to permit BANA to foreclose upon its secured debt. He has frustrated foreclosure, and filed a chapter 13 in which he agreed to pay the admittedly-owed secured debt once he could determine who to pay. He failed to make any such mortgage payments during his chapter 13, leading to conversion of his bankruptcy. This alone merits relief from stay.

      The record developed at the hearings on August 29, 2018, and September 13, 2018, amply demonstrates that Mr. Blas has acted in contravention of the Settlement Agreement he signed with BANA. Although the Settlement Agreement required that he vacate the Property, Mr. Blas vacated the Property only to return approximately one week later because he avers that the Settlement Agreement did not say he could not return. However, the Settlement Agreement expressly states that "Effective on the Departure

---

[41] *Stolrow v. Stolrow's, Inc. (In re Stolrow's Inc.)*, 84 B.R. 167, 171 (B.A.P. 9th Cir. 1988), noting that *Little Creek* was cited with approval in *Arnold*, 806 F.3d at 939.
[42] *See* ECF No. 20 at pp. 3-12.
[43] *See id.* at p. 20.

9

Date, [Mr. Blas] and all other current occupants of the Property shall be deemed to be trespassers on the Property." A "trespasser" is defined as "one who intentionally and without consent or privilege enters another's property."[44] This language is unambiguous. Moreover, BANA sent Mr. Blas a letter on July 13, 2017, warning that if he did not vacate the Property within 48 hours, a lawsuit would be filed against him demanding the return of the proceeds of the Settlement Agreement.[45] In light of these facts, Mr. Blas's assertion that the Settlement Agreement provided him the opportunity to return to the Property after vacating for a brief period is at best disingenuous.

Mr. Blas also argued that the Settlement Agreement did not prohibit him from challenging all future foreclosure efforts of BANA, and that once BANA terminated its foreclosure proceeding pending at the time the Settlement Agreement was signed, Mr. Blas was free to challenge all future foreclosure efforts without breaching the Settlement Agreement.[46] Again, the express language of the Settlement Agreement belies this interpretation. It provides that "[Mr. Blas] acknowledges that he defaulted under the terms and conditions of the [loan documents], and hereby consents to [BANA], or its…successors in interest and assigns, including any or all persons claiming an interest in the [loan documents] and their successors and assigns, proceeding with a non-judicial foreclosure. [Mr. Blas] expressly waives any and all rights and defenses he may have to challenge or contest said foreclosure…." The express terminology in the Settlement Agreement was "**a** foreclosure," not "the foreclosure." Moreover, BANA's reference to a foreclosure pursued by "its successors or assigns" clearly demonstrates the contemplation that new foreclosure proceedings may be commenced, and that any such subsequent proceedings would be encompassed within the terms of the Settlement Agreement. Again, Mr. Blas's contentions that he acted within the bounds of the Settlement Agreement strain credibility.

---

[44] *Trespasser*, Black's Law Dictionary (9th ed. 2009).
[45] ECF No. 54-6.
[46] ECF No. 171 at pp. 87:7-89:2.

10

The timing of Mr. Blas's actions, both in this court and the state court, further evidence an attempt to unreasonably deter and harass BANA. After Mr. Blas acted in direct contravention of the Settlement Agreement by resuming residence in the Property, BANA commenced a new foreclosure proceeding with the issuance of a Notice of Trustee's Sale on August 31, 2017, noticing a foreclosure sale for December 4, 2017.[47] Less than two weeks later, Mr. Blas filed a new state court action against BANA and requested a temporary restraining order to halt the foreclosure he previously promised not to contest.[48] Perhaps in lieu of filing a bond on appeal,[49] Mr. Blas filed this bankruptcy case the same day the Superior Court issued its order denying his request for injunctive relief.[50]

Finally, it is Mr. Blas's own pleadings that demonstrate his dogged determination to thwart BANA's efforts to exercise its rights under the loan documents, to the point of harassment. Despite losing on summary judgment in the Superior Court, after receiving multiple attempts to defeat it, and having that decision affirmed by the Supreme Court, the complaint Mr. Blas filed in Superior Court on September 12, 2017 reiterated the same arguments he raised in his prior state court proceeding. In fact, his complaint in the second Superior Court lawsuit was dismissed entirely on the grounds of res judicata and collateral estoppel.[51] Likewise, this court overruled much of Mr. Blas's objection to BANA's proof of claim on the same grounds, having determined that his arguments were repetitive of those already determined by the state court decisions.[52] These decisions notwithstanding, Mr. Blas continues to raise identical arguments in every aspect of this case and the related adversary proceedings. His repeated refusal to acknowledge the

---

[47] ECF No. 54-7.
[48] ECF No. 54-8.
[49] At least two courts in the Ninth Circuit have held that the filing of a bankruptcy petition in lieu of a bond on appeal can be construed as evidence of bad faith. *See In re Harvey*, 101 B.R. 250 (Bankr. D. Nev. 1989) and *In re Holm*, 75 B.R. 86 (Bankr. N.D. Cal. 1987), both cited with approval by *Marsch*, 36 F.3d at 828-829.
[50] ECF No. 54-9.
[51] *See* ECF No. 54-10.
[52] *See* ECF No. 105.

courts' rejection of his arguments against BANA's foreclosure evidences an intent to unreasonably deter and harass BANA, and is further proof of his bad faith in pursuing this case.[53]

### E. The Effect of Mr. Blas's Chapter 7 Discharge on the Automatic Stay

As noted above, Mr. Blas's chapter 7 discharge was entered on May 31, 2019. In accordance with § 362(c)(1), "the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate." As stated by the chapter 7 trustee at the June 5, 2019 status conference held in this case, the trustee does not intend to abandon the Property back to Mr. Blas unless and until the period for appealing this order has passed without an appeal having been filed. Thus, the Property remains property of the estate notwithstanding Mr. Blas's discharge, but only because of Mr. Blas's ongoing disputes with BANA.

"The primary purpose of § 362 is not applicable to offensive actions by the debtor in possession or bankruptcy trustee."[54] Instead, "the policy behind § 362 is to protect the estate from being depleted by creditors' lawsuits and seizures of property before the trustee has had a chance to marshal and distribute the assets."[55] In Mr. Blas's case, two adversary proceedings are pending. The first, 18-90003-GS, was brought by BANA against Mr. Blas seeking relief related to Mr. Blas's actions with regard to the Settlement Agreement, and Mr. Blas's state court challenge to BANA's subsequent foreclosure efforts. The second, *Blas v. BANA*, 18-90028-GS, was brought by Mr. Blas in continued pursuit of his asserted state court causes of action against BANA. At the June 5, 2019 status conference, the chapter 7 trustee stated his likely intent to abandon the claims asserted in that adversary to Mr. Blas. As stated above, the chapter 7 trustee has also voiced a likelihood that he will abandon the Property to Mr. Blas. Accordingly, the policy behind the

---

[53] Although it was not raised by BANA in the Motion because at the time the Motion was filed, the case was pending under chapter 13, the court notes that some courts have held that where, as here, a chapter 7 trustee consents to relief from the automatic stay, such consent also constitutes "cause" to lift the automatic stay under § 362(d)(1). *See Mohr*, 538 B.R. at 888 (citing *In re Cohen*, 141 B.R. 1, 2 (Bankr. D. Mass. 1992); *In re Davenport*, 266 B.R. 787, 788 (Bankr. W.D. Ky. 2001)).
[54] *White v. City of Santee (In re White)*, 186 B.R. 700, 704 (B.A.P. 9th Cir. 1995).
[55] *Id.*

automatic stay has been served in this case, and the court find this serves as additional cause to grant BANA's motion for relief from the automatic stay.

### F.  Mr. Blas's Remaining Arguments Are Not Persuasive

Having determined that cause exists under § 362(d)(1) to lift the automatic stay, Mr. Blas's remaining arguments are immaterial.  The court has already determined that Mr. Blas's attempt to rescind his loan under TILA was ineffective.[56]  The accuracy of the numbers referenced in the Motion is irrelevant, because BANA has not sought relief from the automatic stay based on those numbers.  Finally, the pendency of the underlying state court litigation is also immaterial given the facts presented.

### III.  CONCLUSION

For the reasons stated above, this court will enter an order granting BANA's motion for relief from the automatic stay.

DATED:  December 17, 2019

    /s/ Gary Spraker_____
GARY SPRAKER
United States Bankruptcy Judge

Serve:  C. Lowery-Graber, Esq.
M. Seville, Esq.
L. Blas, 24245 Temple Drive, Chugiak, AK 99567
K. Battley, Trustee
U.S. Trustee
ECF Participants via NEF
Case Manager

---

[56] *See* ECF No. 105 at pp. 10-12.